UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BARK,

        Plaintiff,

   v.

LISA NORTHRUP, Acting Forest Supervisor of the Mt. Hood National Forest; U.S. FOREST SERVICE, a federal agency,

        Defendants.

3:13-cv-01267-ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Bark, is a non-profit organization dedicated to protecting and restoring the forests, waters, and wildlife of the Mt. Hood National Forest and surrounding public lands. It filed this action against the United States Forest Service and the Acting Forest Supervisor, Lisa Northrup, (collectively "Forest Service"), seeking to enjoin the Jazz Timber Sale in the Collawash Watershed of the Mt. Hood National Forest based on an alleged failures to comply with federal environmental and administrative statutes, including the National Environmental Policy Act, 42 USC § 4321 *et seq* ("NEPA"), and the National Forest Management Act, 16 USC § 1600 *et seq* ("NFMA"). Based on its field work, including post-logging monitoring of similar

1 – FINDINGS AND RECOMMENDATION

timber sales, Bark alleges that the Forest Service has failed to take the required "hard look" at the likely ecological impacts of the Jazz Timber Sale.

This court has jurisdiction over the Complaint pursuant to 28 USC § 1331 because Bark's claims arise under federal law.

Interfor, U.S., Inc. ("Interfor"), a purchaser of two timber sales within the Jazz Timber Sale, has filed a Motion to Intervene (docket #6) as a defendant in this action as a matter of right under FRCP 24(a) or, in the alternative, with permission of the court under FRCP 24(b). Bark opposes intervention.[1] The Forest Service does not oppose intervention, but requests that limitations be placed on Interfor's intervention. For the reasons that follow, Interfor's motion should be granted with some limitations.

## STANDARD

Intervention as a matter of right is warranted under FRCP 24(a)(2) if: (1) the motion is timely; (2) the applicant claims a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action. *California ex rel. Lockyer v. United States*, 450 F3d 436, 440 (9th Cir 2006) (citation omitted). In general, these four requirements are "'broadly interpreted in favor of intervention,' although the party seeking to intervene bears the burden of showing the four elements are met." *Prete v. Bradbury*, 438 F3d 949, 954 (9th Cir 2006), quoting *United States v. Alisal Water Corp.*, 370 F3d 915, 919 (9th Cir 2004). "In addition to mandating broad construction, our review is guided primarily by practical

---

[1] Interfor's Corporate Disclosure Statement (docket # 10) alleges it is a Washington corporation and wholly owned by its Canadian parent company, International Forest Products, Ltd. Barks claims that Interfor misrepresents its corporate status by omitting facts about its nine sawmills in British Columbia and Georgia. However, Interfor holds the contract to log timber from the Jazz Timber Sale. Sandman Decl., Ex.1. For purposes of this case, only Interfor's timber operations associated with the Jazz Timber Sale are relevant to this motion.

2 – FINDINGS AND RECOMMENDATION

considerations, not technical distinctions." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F3d 810, 818 (9th Cir 2001) (internal quotation marks and citation omitted).

Even if the applicant cannot intervene as a matter of right, the court "may permit anyone to intervene who . . . has a claim or defense that share with the main action a common question of law or fact." FRCP 24(b)(1)(B). The existence of a common question of law or fact does not require a court to permit intervention because the district court retains the discretion "to determine the fairest and most efficient method of handling a case." *Venegas v. Skaggs*, 867 F2d 527, 530 (9th Cir 1989), quoting *SEC v. Everest Mgmt. Corp.*, 475 F2d 1236, 1240 (2nd Cir 1972). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3). The court also should evaluate "whether the movant's 'interests are adequately represented by existing parties.'" *Venegas*, 867 F2d at 530, quoting *State of Cal. v. Tahoe Reg'l Planning Agency*, 792 F2d 775, 779 (9th Cir 1986). Promotion of judicial economy is also "a relevant consideration in deciding a motion for permissive intervention." *Id* at 531 (citations omitted). Finally the court may consider whether the applicant's intervention will "significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F2d 1326, 1329 (9th Cir 1977) (citation omitted).

///
///
///
///
///

3 – FINDINGS AND RECOMMENDATION

**FINDINGS**

**I.     Intervention as a Matter of Right**

    **A.     Timing**

This court evaluates three factors to determine whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F2d 1391, 1394 (9th Cir 1992) (citation omitted).

Neither party disputes the timeliness of Interfor's motion. Bark initiated this action on July 25, 2013, and no substantive proceedings occurred before Interfor filed this motion. The record also reveals that Interfor did not delay in filing the motion. It was awarded the contract with the Forest Service for purchase of lumber from the Jazz Timber Sale on September 24, and filed this motion on September 30, 2013. Sandman Decl., Ex. 1.[2]  Thus, Interfor's motion was timely filed.

    **B.     "Significantly Protectable" Interest**

"The requirement of a significantly protectable interest is generally satisfied when 'the interest is protectable under some law, and that [sic] there is a relationship between the legally protected interest and the claims at issue.'" *Arakaki v. Cayetano*, 324 F3d 1078, 1084 (9th Cir 2003), quoting *Sierra Club v. EPA*, 995 F2d 1478, 1484 (9th Cir 1993). "[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *California ex rel. Lockyer*, 450 F3d at 441. "Contract rights are traditionally protectable interests." *Berg*, 268 F3d at 820 (citations omitted) (ruling that an applicant who had received contracts pursuant to the disputed environmental compliance

---

[2] The parties have submitted documents with various attachments. Citations to declarations are identified by the last name of the declarant and citations are to the paragraph(s) of the declaration or to attached exhibits.

document had sufficient legally protectable interests). "Because the interest factor . . . is simply a threshold requirement, broad and practical construction in favor of potential intervenors is particularly appropriate here." *Greene v. United States*, 996 F2d 973, 979 (9th Cir 1993).

Interfor argues it has a significantly protectable interest in this action arising from its timber contracts with the Forest Service, citing *Sierra Club v. Espy*, 18 F3d 1202 (5th Cir 1994). In *Sierra Club*, the forest products industry filed a motion for intervention based on contracts with the Forest Service.  The Fifth Circuit found the applicant had a legally protectable property interest in existing timber contracts that were threatened by the potential injunction sought by the plaintiffs.  As with the contracts in *Sierra Club*, an injunction of the Jazz Timber Sale or a declaratory ruling that the Forest Service violated federal law in approving the sale threatens Interfor's timber contracts.  Thus, Interfor has a significantly protectable interest.

    **C.**    **Impairment of Interest**

If the entity seeking intervention "would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F3d at 822, quoting FRCP 24 advisory committee's notes.  Interfor has already paid the Forest Service a down payment of $51,000 towards the $510,000 contract.  Sandman Decl., ¶ 2. Enjoining the Jazz Timber Sale would cause Interfor to lose not only its down payment, but also the additional investment necessary to find replacement timber fitting the specifications required for processing at the Molalla sawmill.  *Id*, ¶ 3.  Interfor would have to transport any replacement timber to the Molalla facility twice as far as timber from the Jazz thinning area.  *Id*.  Moreover, it is unlikely Interfor will be able to find replacement lumber in time to meet its production schedule based on its Jazz Timber Sale contract.  *Id*, ¶ 4.  Thus, Interfor would be substantially affected by a determination in this action.

### D. Inadequacy of Representation by Existing Party

Bark's opposition to Interfor's intervention centers on the final requirement that the Forest Service will not adequately represent Interfor's interest. Although the Forest Service does not oppose the motion, it believes that it can adequately represent Interfor in defending this action.

The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent its interest. *Berg*, 268 F3d at 822 (citation omitted). That burden is minimal and satisfied if the applicant can demonstrate that representation of its interests "may be" inadequate. *Arakaki*, 324 F3d at 1086, citing *Trbovich v. United Mine Workers*, 404 US 528, 538 n10 (1972). In determining the adequacy of representation, the Ninth Circuit considers the following three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id* (citation omitted).

> The most important factor in determining the adequacy of representation is how the interest compares with the interests of existing parties. When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation.
>
> There is also an assumption of adequacy when the government is acting on behalf of a constituency that it represents. In the absence of a "very compelling showing to the contrary," it will be presumed that a state adequately represents its citizens when the applicant shares the same interest.

*Id* (citations omitted).

Before *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F3d 1173 (9th Cir 2011), the "federal defendant rule" prohibited private parties and state and local governments from intervening as of

6 – FINDINGS AND RECOMMENDATION

right in NEPA actions. "The rationale for this rule is that such parties lack a 'significantly protectable' interest warranting intervention of right under Rule 24(a)(2) because NEPA is a procedural statute that binds only the federal government." *Id* at 1177 (citation omitted). However, the Ninth Circuit abandoned the "federal defendant rule" because it failed to recognize the "very real possibility that private parties seeking to intervene in NEPA cases may, in certain circumstances, demonstrate an interest 'protectable under some law.'" *Id* at 1179. Thus, private parties are no longer categorically precluded from intervening in NEPA cases.

Bark argues that Interfor has not made a compelling showing to overcome the presumption of adequate representation by the Forest Service. It points out that they share the ultimate objective of ensuring completion of the Jazz Timber Sale with no reduction in the volume of timber harvested. Despite sharing that objective, Interfor responds that the Forest Service is responsible for the broader public interest which may conflict with Interfor's private interest. "The presumption [of adequacy] may be overcome if the intervenors' interests are narrower than that of the government and therefore may not be adequately represented." *Arakaki*, 324 F3d at 1088, citing *Forest Conservation Council v. U.S. Forest Serv.*, 66 F3d 1489, 1499 (9th Cir 1995), *overruled on other grounds by Wilderness Soc'y*, 630 F3d 1173. In fact, "[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council*, 66 F3d at 1499 (citation omitted).

In support, Interfor cites *Berg*, in which the court found that the Fish and Wildlife Service could not be expected to successfully safeguard the legally protectable interests of private parties who sought intervention. "The priorities of the defending government agencies are not simply to confirm the [private parties'] interests in the Plans, the IA, and the City's ITP. The interests of

7 – FINDINGS AND RECOMMENDATION

government and the private sector may diverge." *Berg*, 268 F3d at 823.   The Ninth Circuit made a similar finding in *Forest Conservation Council* that the State of Arizona presented interests as an intervenor unique from those of the Forest Service.  It explained that Arizona's interest did not lie in the "procedural requirements of NEPA and NFMA with which the Forest Service must comply, but in the question of whether all forest management activities in Arizona's national forests . . . should be enjoined." *Forest Conservation Council*, 66 F3d at 1499.  In support, the court cited the Fifth Circuit's reasoning that the "government must present the broad public interest, not just the economic concerns of the timber industry."  *Id*, quoting *Sierra Club v. Espy*, 18 F3d at 1208.

Interfor has a narrower interest than the Forest Service in this action.  Similar to the federal agencies in *Berg* and *Forest Conservation Council*, the Forest Service's interest in affirming the legality of the Jazz Timber Sale invokes its duty to protect the public interest through NEPA and NMFA.  Bark contends that the Forest Service also has a monetary interest in upholding the Jazz Timber Sale because its contract with Interfor generates revenue.  However, unlike Interfor, generating revenue is not the Forest Service's only interest in the project.  It is inherently responsible for protecting and representing the public interest and could well decide to embrace some of the environmental goals of Bark that could conflict with Interfor's interest.

Bark cites *Oregon Natural Desert Ass'n v. Bureau of Land Mgmt.*, 09-CV-00369-PK, 2010 WL 774037 (D Or Mar. 2, 2010), as an example of intervention denied to an applicant sharing the same objective as the existing federal defendant.  However, that case is distinguishable for two reasons.  First the court denied intervention because the intervenor claimed interests which were broader than the scope of the litigation.  The plaintiff challenged a federal land management plan for failing to comply with environmental law.  The applicant, a

8 – FINDINGS AND RECOMMENDATION

county, claimed tangential interests in its ability to perform mandatory duties such as sheriff, search and rescue, and maintenance services. In contrast, Interfor claims interests that are directly relevant to this lawsuit—contract rights approved pursuant to the now challenged agency action. Second, the court found that the county and the defendant had the same interest to uphold the legality of the Travel Management Plan that both entities had helped create. In contrast, Interfor claims a unique, private timber interest arising from its contractual relationship with the government and not from any joint effort with the Forest Service.

As evidence of a potential conflict of interest, Interfor references past timber sales in which the Forest Service acted against Interfor's economic interest by delaying and decreasing the volume of lumber available. Sandman Decl., ¶ 5. Specifically, the Forest Service delayed awarding the D-Bug Sale in the Umpqua National Forest, stalled operations for the Pin Thin Sale in the Mt. Hood National Forest, and deleted volume from the salvage sales on the Deschutes National Forest. *Id.*

Bark dismisses this evidence as irrelevant because the referenced sales either did not occur in the Mt. Hood National Forest or were not challenged for failure to comply with federal law. However, past dealings may indicate that the federal government's "duty to represent a much broader spectrum of interest may conflict with its ability to effectively represent" more narrow economic interests of private parties. *Cascadia Wildlands v. Bureau of Land Mgmt.*, Civ. No. 6:12-cv-95-AA, slip op (docket # 13), at 7 (D Or Apr. 25, 2012). In that case, a timber company sought to intervene in an action challenging the BLM's compliance with NEPA in administering a timber sale. Judge Aiken allowed intervention as of right, in part because the BLM had previously acted contrary to the timber company's interest by modifying sales to

increase reserves and, thus, could not adequately represent the timber company. Similarly here, Interfor "has a specific, personal interest in the timber that is not shared by the public." *Id*.

Finally, Bark argues that, as required by the three factors in *Arakaki*, Interfor has failed to point to any unique defenses, arguments, or elements it will present that the Forest Service either cannot, will not, or may neglect to present. In essence, Bark contends that Interfor's specific economic interest is not relevant to the main issue of whether the Forest Service complied with NEPA and NMFA. In support, Bark references the similarity between the answers filed by the Forest Service and Interfor, both of which deny allegations that the Forest Service violated NEPA and NMFA and assert the same affirmative defenses. However, the Ninth Circuit measures adequacy of representation "in relation to the subject matter of the action" and not "in relation to the particular issue before the court." *Sagebrush Rebellion, Inc. v. Watt*, 713 F2d 525, 528, 531 (9th Cir 1983) (citing FRCP 24 to refute the dissent's assertion that the inquiry is "whether the applicants' interests in the first phase of trial would be adequately represented").

Interfor has not specified what defenses, arguments, or elements it will raise in addition to the Forest Service. However, it does not yet know the contents of the administrative record and what arguments the Forest Service will make. As this case advances, circumstances may well arise in which the Forest Services's public interest will conflict with Interfor's economic interest. For example, Interfor may cite its interest in meeting its production schedule to argue for a faster resolution, may find certain parts of the administrative record missing or overlooked by the Forest Service, or may rely on the significance of other laws. In addition, with respect to the pending motion for a preliminary injunction, it clearly has a different interest than the Forest Service regarding the extent of harm suffered. In fact, the Forest Service does not dispute the assertion that it will likely not represent Interfor's precise economic interest. The Ninth Circuit

10 – FINDINGS AND RECOMMENDATION

has found persuasive a similar acknowledgement by an existing defendant. *See Berg*, 268 F3d at 823 (finding defendant's admission that it "will not represent proposed intervenors' interests in this action" as support for the applicant).

In sum, Interfor has provided a compelling reason for why representation by the Forest Service may be inadequate. Thus, Interfor may intervene as a matter of right, and the court need not reach the issue of whether permissive intervention is appropriate.

## II.      Limits to Intervention

"An intervention of right under the amended rule may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." FRCP 24 advisory committee's notes to the 1966 Amendment; *see also Stringfellow v. Concerned Neighbors in Action*, 480 US 370, 383 n2 (1987) (Brennan, J., concurring) ("[R]estrictions on participation may also be placed on an intervenor of right and on an original party.").

In order to increase judicial efficiency and avoid undue delay from Interfor's participation, the Forest Service urges the court to: (1) limit judicial review to the administrative record without supplementation by Interfor; (2) bar Interfor from conducting any discovery; (3) require Interfor to file its briefs after the Forest Service and to focus only on issues not addressed by Forest Service; (4) and require each party to bear its own costs and fees related to Interfor's participation. To avoid prejudice to Bark from the addition of a well-financed industry defendant with the potential to double the amount of briefing, Bark also proposes that the court direct Interfor to coordinate with the Forest Service to apportion a total of 35 pages for their response briefs and/or only address arguments not raised by the Forest Service.

Interfor does not object to an order precluding it from conducting discovery and requiring a staged briefing schedule.  Therefore, those restrictions should be imposed.  However, Interfor objects to limits that would preclude it from moving to supplement the administrative record, addressing issues also raised by the Forest Service or sharing a briefing limit with the Forest Service of 35 pages.

With respect to the administrative record, Interfor explains that it expects the Forest Service to include all the relevant documents, but wants to preserve the opportunity to supplement as appropriate, acknowledging that supplementation is only allowed under certain narrow exceptions.  *See Southwest Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F3d 1443, 1450 (9th Cir 1996).  To avoid delay, it proposes to file its motion within three weeks after filing of the administrative record.  Since three weeks would not cause an undue delay, Interfor should be allowed to seek to supplement the record within the time-frame proposed.

With respect to issues that may be raised by Interfor, Bark's fear of prejudice due to increased attorney fees is well-founded.  However, to protect its own interests, Interfor should be allowed to argue not only new issues, but also to supplement those issues argued by the Forest Service.  At this point, it is difficult to predict whether 35 pages shared with the Forest Service would be sufficient in that regard.  Bark's concern may be adequately assuaged by simply precluding Interfor from duplicating any arguments made by the Forest Service.

As to attorney fees and costs, Bark point out that, if it prevails, it may recover attorney fees and costs from the Forest Service related to Interfor's participation in this case. The test for whether such fees and costs are recoverable is whether the private parties are aligned with the government, making their positions "intertwined" and "not readily compartmentalized."  *See Ctr.*

12 – FINDINGS AND RECOMMENDATION

*for Food Safety v. Vilsack*, No. C-08-00484 JSW(EDL), 2011 WL 6259891, at *6-7 (ND Cal Oct. 13, 2011).

## RECOMMENDATION

For the reasons stated above, Proposed Defendant Intervenor's Motion to Intervene (docket #6) should be GRANTED with the following limitations:

(1)  Interfor shall not be allowed to conduct any discovery;

(2)  Interfor must seek to supplement the administrative record within three weeks after it is filed; and

(3)  Interfor will file its brief after the Forest Service, in accordance with a staged briefing schedule set by the court, and must not duplicate any arguments made by the Forest Service.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Thursday, December 05, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED November 18, 2013.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge

13 – FINDINGS AND RECOMMENDATION